# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ROBERT STARBUCK, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N25C-10-211 MAA |
| | ) |
| GOOGLE LLC, a limited liability company, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

Submitted: April 6, 2026
Decided: July 24, 2026

*Google LLC's Motion to Dismiss:*
**DENIED.**

## OPINION

Andrew E. Russell, Esquire and Virginia Lynch, Esquire, of SHAW KELLER LLP, Wilmington, DE, Krista L. Baughman, Esquire (Argued), of BAUGHMAN LAW, Walnut Creek, CA, Jesse Franklin-Murdock, Esquire, of DHILLON LAW GROUP Inc., San Francisco, CA, *Attorneys for Plaintiff*.

Andrew D. Cordo, Esquire, Kaitlin E. Maloney, Esquire, and Brooke D. Pridham, Esquire, of WILSON SONSINI GOODRICH & ROSATI, P.C., Wilmington, DE, Matthew A. Macdonald, Esquire (Argued), of WILSON SONSINI GOODRICH & ROSATI, P.C., Los Angeles, CA, *Attorneys for Defendant*.

**Adams, J.**

**INTRODUCTION**

In this action, Plaintiff Robert Starbuck ("Starbuck") sued Defendant Google, LLC ("Google") for defamation, alleging Google's artificial intelligence tools produced defamatory statements about Starbuck. Google moves to dismiss Starbuck's Complaint, contending Starbuck fails to satisfy certain necessary elements of a defamation cause of action.

The issues presented in this case reveal a new frontier for defamation law, in which artificial intelligence tools are allegedly employed to effectuate the defamatory ends of their makers. This motion does not force the Court to take a deep dive into those novel issues. Instead, the Court resolves Google's motion to dismiss based on established defamation caselaw and the plaintiff-friendly standard at the pleading stage. This Opinion DENIES Google's motion in its entirety.

**FACTS AND PROCEDURAL HISTORY**

The factual background outlined herein is drawn from the Complaint,[1] accepting all well-pled allegations as true only for purposes of this Motion.[2] The Court will not necessarily use terms like "alleged" throughout. The Court intends to convey no agreement with the truth of the matters asserted in the Complaint. The veracity of the Complaint's allegations can be resolved after discovery.

---

[1] D.I. 1.
[2] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citation omitted).

1

## A. The Parties.

Starbuck is a resident of Tennessee[3] and is a filmmaker, journalist, and activist.[4]

Google is a Delaware LLC with a principal place of business in California.[5] In 2017, Google created the Google AI division, which is focused on developing artificial intelligence ("AI") products.[6]

## B. Starbuck identifies false statements by Bard in 2023.

In March 2023, Google released Bard, its first AI product powered by large language models ("LLM"), for early access.[7] LLM-based AI products "process natural language to provide intelligent responses in a chat, including follow-up responses that mimic human conversation in a sophisticated fashion."[8]

In December of 2023, Starbuck learned Bard was providing false information regarding Starbuck, incorrectly tying Starbuck to a "notorious white supremacist."[9] Starbuck further learned Bard would, when asked, provide argument in favor of

---

[3] Compl. ¶ 14.
[4] *Id.* ¶ 2.
[5] *Id.* ¶ 15.
[6] *Id.* ¶ 18.
[7] *Id.* ¶¶ 21-22.
[8] *Id.* ¶ 19.
[9] Compl. ¶¶ 28-32.

Starbuck's execution.[10]   Bard further revealed to Starbuck it had been conveying falsehoods about Starbuck, upon inquiry, since October 2023.[11]

On December 13, 2023, Starbuck posted on X, tagging Google's corporate X account; Google AI's corporate X account; Google CEO Sundar Pichai; and a chief scientist of at least two Google divisions named Jeff Dean.[12]   In the X post, Starbuck "alerted Google to the issue" of the false statements produced by Bard and "asked that the false statements be retracted and corrected."[13]   That same day, a Google employee named Carla Sonnenberg reached out to Starbuck to inquire about his concerns, and Starbuck and Sonnenberg continued correspondence via email.[14]

On February 8, 2024, Google combined Bard with a newer AI tool known as Gemini.[15]   The two AI tools were combined under the Gemini name.[16]   Google's Gemini is also used to empower other AI tools and interfaces, including the "Gemma" chatbot.[17]   Given the various Google AI platforms addressed in the Complaint, the Court will reference "Google AI" to refer to any or all of Google's AI platforms, for clarity and simplicity, unless otherwise specified.

---

[10] *Id.* ¶ 33.
[11] *Id.* ¶ 35.
[12] *Id.* ¶ 36.
[13] *Id.*
[14] *Id.* ¶ 37.
[15] Compl. ¶ 24.
[16] *Id.*
[17] *Id.* ¶ 25.

On February 22, 2024, Starbuck posted on X again, this time tagging Google's corporate account, Pichai, and Jack Krawczyk—a senior director in Google's AI divisions.[18]  Starbuck again raised concerns that Google AI was spreading false information about him.[19]  Krawczyk then followed Starbuck on X.[20]

On February 24, 2024, Sonnenberg wrote an email to Starbuck in which she stated she had tried to help him, but was unsuccessful, and submitted her resignation the previous day.[21]

Starbuck contends the defamation by Google AI platforms continued after the February 24, 2024 X post.[22]  Google contends that use of Google AI is subject to a disclaimer as to the veracity of its outputs,[23] but Starbuck did not discuss any disclaimer in his Complaint.

**C. The issues continue in 2025.**

The Complaint does not always specify exact dates and times for events which appear to have taken place between February 2024 and July 31, 2025, leaving ambiguity as to what (if any) false information was provided by a Google AI platform during this time gap.  Reading the Complaint in the light most favorable to Starbuck, Starbuck's issues with Google appear to have persisted during this period,

---

[18] *Id.* ¶ 41.
[19] *Id.* ¶¶ 40-41
[20] *Id.* ¶ 42.
[21] Compl. ¶ 39.
[22] *Id.* ¶¶ 24, 43.
[23] OB at 7 n. 17.

as on July 31, 2025 and August 12, 2025, Starbuck sent written correspondence to Google which was received by Google's legal department (the "Legal Department Notices").[24] The Legal Department Notices "put Google on further notice as to its AI tools' repeated defamation of Starbuck."[25] The Legal Department Notices were not attached to the Complaint or briefing on Google's motion to dismiss, and the Court is not aware of their exact contents, meaning the Court does not know which specific false statements (if any) were identified therein.

According to Starbuck, Google AI continued to produce defamatory representations *after* the Legal Department Notices were delivered. Specifically, as summarized in paragraph 100 of the Complaint, Starbuck brings this action based on the following statements (the "Outputs") he contends are defamatory:[26]

1. On August 14, 2025, Google AI stated Starbuck had been accused of sexual assault and sexual harassment by multiple women.

2. On August 14, 2025, Google AI stated Starbuck's nanny accused him of abuse and neglect.

3. On August 14, 2025, Google AI stated at least eight women had accused Starbuck of sexual misconduct, harassment, or assault.

---

[24] Compl. ¶ 97.
[25] *Id*.
[26] Compl. ¶ 100.

5

4. On August 14, 2025, Google AI stated Starbuck had been accused of rape of a minor.

5. On August 14, 2025, Google AI stated Starbuck had stolen valor by claiming he was served in the military when he had not.

6. On August 15, 2025, Google AI stated Starbuck had engaged in abusive behavior toward multiple women, including a fictitious ex-wife.

7. On August 15, 2025, Google AI stated Starbuck was involved in the January 6, 2021 riot on the Capitol.

8. On August 16, 2025, Google AI stated Starbuck had been accused of stalking and harassment, leading to a restraining order, civil lawsuit, and criminal charges.

9. On August 19, 2025, Google AI stated Starbuck had been accused of stalking and harassment by multiple women, including his fictitious ex-wife, leading to restraining orders and criminal charges.

10. On August 19, 2025, Google AI stated Starbuck had been criminally convicted for violating a restraining order.

11. On August 19, 2025, Google AI stated Starbuck posed an unacceptable level of risk to children due to his (fictitious) "confirmed criminal record."

12. On August 20, 2025, Google AI again stated Starbuck was involved in the January 6, 2021 riot on the Capitol.

13. On August 21, 2025, "that in November 2023, Robby Starbuck sexually abused a young woman when she was a teenager in the early 2000s, while she was in a youth group Starbuck was associated with. [*sic*]"

14. On August 21, 2025, Google AI again stated Starbuck was involved in the January 6, 2021 riot on the Capitol.

15. On August 21, 2025, Google AI stated Starbuck had worked in the adult film industry and had used his power and influence therein to pressure performers into uncomfortable scenes, engaged in financial exploitation, and had been accused of a non-consensual sexual act with a woman.

16. On August 26, 2025, Google AI stated Starbuck had been accused of sexual assault and rape.

17. On August 27, 2025, Google AI again stated Starbuck was involved in the January 6, 2021 riot on the Capitol.

18. On September 9, 2025, Google AI stated Starbuck was accused of sexual assault by multiple women in the music industry.

19. On October 1, 2025, Google AI stated Starbuck had engaged in multiple instances of sexual assault.

20. On October 9, 2025, Google AI stated Starbuck had a criminal record that included a 2001 conviction for assault as well as other charges including drug use and disorderly conduct.

7

21. On October 9, 2025, Google AI stated Starbuck engaged in multiple instances of sexual misconduct, including sexual assault of a minor.

22. On October 17, 2025, Google AI stated Starbuck shot a man in the leg with a 9mm handgun, was charged with a felony, and pled guilty to reckless endangerment.

Starbuck alleges the Outputs above are provably false, being fabricated from whole cloth.[27] Starbuck alleges throughout the Complaint that Google AI's "sources" for its claims were themselves fabricated.[28] Google does not contend the Outputs are true.

Starbuck alleges Google AI admitted to having provided false statements regarding Starbuck to 2,843,917 unique users.[29] Starbuck further alleges the Outputs were provided to third parties including his children and colleagues.[30]

Starbuck specifically alleges that two unidentified individuals approached him about the statements. In 2025, a woman approached Starbuck to inquire about the veracity of a Google AI tool's representation that assault allegations had been brought against Starbuck.[31] Also in 2025, an individual approached Starbuck and "expressed belief" that Starbuck had participated in the January 6, 2021 riot at the

---

[27] Compl. ¶ 102.
[28] *See e.g. Id*. ¶ 86.
[29] *Id*. ¶ 106.
[30] *Id*.
[31] Compl. ¶ 92.

Capitol based on representations of a Google AI tool.[32]  Starbuck does not further identify the individuals involved in these interactions or specify when in 2025 the interactions occurred.

Starbuck alleges Google AI admitted to having a "deliberate, engineered bias designed to damage the reputation of individuals with whom Google executives disagree politically," including Starbuck.[33]

Starbuck alleges specific, "terrifying" thoughts he experiences because of the alleged defamation by Google AI, including the fear of an attack on Starbuck or his family in reprisal for the misconduct of which he is falsely accused.[34]  Starbuck further alleges his emotionally distressing thoughts have been exacerbated in light of the recent assassination of Charlie Kirk, another political commentator.[35] Starbuck notes an individual was recently arrested for threatening to kill Starbuck, and that the FBI is investigating multiple death threats made against Starbuck.[36]

**D. Procedural History.**

On October 22, 2025, Starbuck brought the instant action, alleging one Count of defamation *per se* against Google.[37]  On November 17, 2025, Google filed a

---

[32] *Id.* ¶ 93.
[33] *Id.* ¶ 77-78.
[34] *Id.* ¶ 95.
[35] *Id.* ¶ 89.
[36] *Id.*
[37] D.I. 1.

motion to dismiss (the "Motion") and opening brief in support thereof.[38] On December 22, 2025, Starbuck filed his answering brief in opposition to Google's Motion.[39] On January 19, 2026, Google filed its reply brief in support of the Motion.[40] On March 3, 2026 the Court heard oral argument on the Motion.[41] On April 6, 2026, the Court received a copy of the transcript from the oral argument on the Motion,[42] and took the matter under advisement.[43]

## LEGAL STANDARD

Google moves to dismiss the Complaint pursuant to Superior Court Civil Rule 12(b)(6), alleging Starbuck fails to state a claim for which relief can be granted.[44] While caselaw notes the benefits to early dismissal of defamation actions,[45] ordinary

---

[38] D.I. 10. Citations to Google's opening brief are in the form of "OB at __."
[39] D.I. 18. Citations to Starbuck's answering brief are in the form of "AB at __."
[40] D.I. 19. Citations to Google's reply brief are in the form of "RB at __."
[41] D.I. 21.
[42] Citations to the transcript are in the form of "Tr. at __."
[43] D.I. 22.
[44] D.I. 10.
[45] *ShotSpotter Inc. v. VICE Media, LLC*, 2022 WL 2373418, at *6 (Del. Super. June 30, 2022) (citations omitted). In its briefing, Google cites to *ShotSpotter* and *Armenta v. G/O Media Inc.*, 2024 WL 4433946 (Del. Super. Oct. 7, 2024) as support for the proposition that a higher hurdle must be cleared for a defamation plaintiff to survive a motion to dismiss in the Superior Court of Delaware. OB at 16. The *Armenta* court cited to *ShotSpotter*, which in turn cited cases from federal courts, *Kahl v. Bureau of National Affairs, Inc.*, 856 F.3d 106 (D.C. Cir. 2017) and *Fairbanks v. Roller*, 314 F.Supp.3d 85 (D. D.C. 2018). In *Kahl*, the D.C. Court of Appeals reversed the district court's ruling denying summary judgment in a defamation action, noting that "[t]o preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." 856 F.3d at 109 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (on appeal from a granting of summary judgment) and *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (on appeal from a jury trial verdict)). *Fairbanks* was decided on a motion to dismiss but cited *Kahl*. 314 F.Supp.3d at 89. Delaware's pleading standards on a motion to dismiss, in contrast with the higher burden imposed

canons of Rule 12(b)(6) still apply.[46] "Delaware's pleading standard is 'minimal.'"[47] "Delaware is a notice pleading jurisdiction."[48] "Thus, for a complaint to survive a motion to dismiss, it need only give general notice of the claim asserted."[49] "Dismissal is inappropriate unless 'under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted.'"[50]

The benchmark for pleadings in Delaware ask whether success on a claim is *possible*, not probable.[51] "In considering a Rule 12(b)(6) motion, the court (i) accepts as true all well-pleaded factual allegations in the complaint; (ii) credits vague allegations if they give the opposing party notice of the claim; (iii) draws all

by the Federal Rules of Civil Procedure, are minimal. *Cent. Mortg.*, 27 A.3d at 537 (reemphasizing the "reasonable conceivability standard"); *id*. at 537 n. 13 ("Our governing 'conceivability' standard is more akin to 'possibility,' while the federal 'plausibility' standard falls somewhere beyond mere 'possibility' but short of 'probability.'" (citation omitted)). Thus, despite *Shotspotter's* reference to the policy emphasized in *Kahl*, the Court is not aware of any Delaware caselaw definitively heightening the pleading standards in a Delaware defamation case. Indeed, *Shotspotter* itself reemphasized the low pleading standards applicable in Delaware. 2022 WL 2373418, at *2. The Court, therefore, will apply the familiar standard for resolving a motion to dismiss when deciding this action.

[46] *See US Dominion, Inc. v. Fox Corp.*, 2022 WL 2229781, at *4 (Del. Super. June 21, 2022) (applying general principles for Rule 12(b)(6)); *see also Cytotheryx, Inc. v. Castle Creek Biosciences, Inc.*, 2025 WL 3142373, at *3 (Del. Ch. Nov. 10, 2025) (same); *ShotSpotter*, 2022 WL 2373418, at *2 (same); *Whittington v. Whittington*, 2024 WL 490807, at *1 (Del. Super. Feb. 8, 2024) (same).

[47] *US Dominion*, 2022 WL 2229781, at *4 (quoting *Cent. Mortg.*, 27 A.3d at 536).

[48] *ShotSpotter*, 2022 WL 2373418, at *2 (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).

[49] *Cahill*, 884 A.2d at 458 (citation modified).

[50] *US Dominion*, 2022 WL 2229781, at *4 (quoting *Unbound Partners Ltd. P'ship v. Invoy Hldgs. Inc.*, 251 A.3d 1016, 1023 (Del. Super. 2021) (internal quotation marks omitted)).

[51] *Cent. Mortg.*, 27 A.3d at 537 (reemphasizing the "reasonable conceivability standard"); *id*. at 537 n. 13 ("Our governing 'conceivability' standard is more akin to 'possibility,' while the federal 'plausibility' standard falls somewhere beyond mere 'possibility' but short of 'probability.'" (citation omitted)).

reasonable factual inferences in favor of the non-moving party; and (iv) denies dismissal if recovery on the claim is reasonably conceivable."[52]  The court need not "accept conclusory allegations unsupported by specific facts or ... draw unreasonable inferences in favor of the non-moving party."[53]

Pursuant to Delaware law, a claim for defamation must allege facts supporting five elements: (1) the defamatory character of the statement; (2) publication of the statement to a third party; (3) that the statement refers to the plaintiff; (4) the third party's understanding of the statement's defamatory character; and (5) injury.[54] Delaware recognizes the doctrine of defamation *per se*, under which a plaintiff need not prove special damages for certain categories of defamatory statements.[55] Starbuck brings this action as defamation *per se*.[56]

Google argues Tennessee law, not Delaware law, applies to the instant case.[57] The elements of defamation under Tennessee law are: "(1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other;

---

[52] *US Dominion*, 2022 WL 2229781, at *4 (citing *Cent. Mortg.*, A.3d at 535).
[53] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).
[54] *Schweitzer v. LCR Cap. P'rs, LLC*, 2020 WL 1131716, at *9 (Del. Super. Mar. 9, 2020) (citation omitted).
[55] *Id*. (citing *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978)).
[56] Compl. at 31.
[57] OB at 19.

12

or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement."[58]

Regardless of the applicable state law, the Supreme Court of the United States has held that, if the alleged victim of the defamation is a public figure, the plaintiff must prove the defendant spoke or wrote with "actual malice," meaning "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not."[59]

## ANALYSIS[60]

In advocating dismissal of the sole Count of Starbuck's Complaint, Google raises three arguments. First, Google contends that Starbuck fails to plead factual support for damages, a necessary element under Tennessee law.[61] Next, Google argues Starbuck fails to plead facts to support the element of publication.[62] Finally, Google contends Starbuck fails to plead facts supporting his allegation that Google acted with actual malice.[63]

---

[58] *Eisenstein v. WTVF-TV, News Channel 5 Network, LLC*, 389 S.W.3d 313, 317 (Tenn. Ct. App. 2012) (quoting *Hibdon v. Grabowski,* 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005)).
[59] *New York Times Co. v. Sullivan*, 376 U.S. at 279-280.
[60] Google notes it assumes for purposes of this motion that an AI output "can be defamatory." OB at 18 n. 48. Accordingly, the Court analyzes the issues as presented by the parties, without casting any position on the viability of Starbuck's claims given the murky waters of defamation law in this context.
[61] OB at 18.
[62] *Id*. at 21.
[63] *Id*. at 30.

Google, arguing that Tennessee and Delaware law differ with regard to Starbuck's obligation to prove damages,[64] acknowledges that analysis into damages, and the requisite conflict-of-laws analysis which would come therewith, is unnecessary if Starbuck's claim fails on the elements of publication and actual malice.[65] Accordingly, the Court will first analyze the Parties' arguments regarding publication and actual malice before addressing the issues surrounding damages.

**1. Starbuck pleads sufficient facts indicating the Outputs were published to third parties.**

*a. The allegations of the Complaint enable the Court to infer that the Outputs were received by third parties.*

Google argues Starbuck's claim fails because "he has not alleged who received any of the [Outputs] or under what circumstances."[66] Starbuck contends the allegations in the Complaint are sufficient to satisfy the publication element.[67] Google concedes that Delaware and Tennessee law "do not materially differ" on the element of publication,[68] so the Court will primarily rely on Delaware caselaw.

Google argues Starbuck pleads no facts indicating to whom the alleged defamatory statements were made, and the Complaint should therefore be dismissed.[69] Google relies on *Schweitzer v. LCR Capital Partners, LLC*, in which

---

[64] *Id*. at 18.
[65] Tr. at 10:17-11:12.
[66] OB at 21.
[67] AB at 18.
[68] OB at 21 n. 62.
[69] *Id*. at 22, 25

14

this Court determined the plaintiff had not pled facts "indicating, even generally, to whom [the defamatory] statement was made."[70]

Google's reliance on *Schweitzer* is misplaced. In this action, unlike in *Schweitzer*, the Complaint provides facts indicating some people received the alleged defamatory Outputs and articulating the circumstances of their receipt. In *Schweitzer*, the plaintiff merely recited the elements of defamation in the complaint with no supporting factual allegations.[71]

Starbuck alleges the "False Statements" (capitalized, as referring to the actionable Outputs listed in paragraph 100 of the Complaint)[72] were published to "third parties, including Starbuck's own children and colleagues."[73] Starbuck alleges at least two individuals approached him regarding misrepresentations produced to them by a Google AI product.[74] Starbuck alleges Google AI revealed that it had produced false statements regarding Starbuck to 2,843,917 unique users.[75]

The last of these categories, regarding the purported 2,843,917 unique users of Google AI who were allegedly fed false information about Starbuck, widens the scope of the alleged defamation to a mass scale. In response to this allegation, Google argues Google AI's "admission" is unreliable, as the bulk of Starbuck's

---

[70] 2020 WL 1131716.
[71] *Id.* at *9.
[72] Compl. ¶ 100.
[73] *Id.* ¶ 106.
[74] *Id.* ¶¶ 92-93.
[75] *Id.* ¶ 106.

Complaint asks the Court to believe the AI routinely misrepresents the truth about Starbuck, but then Starbuck asks the Court to believe this AI representation.[76]

Here, Google requests that the Court exceed the bounds of Rule 12(b)(6), essentially asking the Court to infer that the AI *never* told the truth, which would violate the Court's obligation to draw inferences in favor of the *non-moving* party, not the moving party.[77] A Rule 12(b)(6) inquiry investigates whether a factual assertion is *possible*, not probable.[78] Given the lack of definitive information regarding Google AI's capabilities, it is at least *possible*, on this record, that Google AI (1) tracks the users to which it provides information, (2) correctly identified the number of times it provided fabricated representations, and (3) provided this concession without being improperly manipulated by Starbuck. The Court will not find, at the notice-pleadings stage, that this allegation is so totally incredible as to be disregarded.

The 2.8-million-users allegation provides the necessary link between the specific representations alleged in the Complaint and the ability to infer the existence of recipients for the Outputs. Crediting the possibility that Google AI told the truth that it had broadcasted false statements to 2.8 million unique users means that people

---

[76] OB at 27-28.

[77] *US Dominion*, 2022 WL 2229781, at *4 (citing *Cent. Mortg.*, 27 A.3d at 535).

[78] *Cent. Mortg.*, 27 A.3d at 537 (reemphasizing the "reasonable conceivability standard"); *id.* at 537 n. 13 ("Our governing 'conceivability' standard is more akin to 'possibility,' while the federal 'plausibility' standard falls somewhere beyond mere 'possibility' but short of 'probability.'" (citation omitted)).

other than Starbuck received *something* false about Starbuck—leaving the question of what they received. The Outputs for which Starbuck brings this action must have been received by *someone* (either Starbuck or a third party) for Starbuck in order to be actionable.

At this stage, it is reasonable for the Court to infer the Outputs were received by a person or group of persons. Questions remain as to whether that person was just Starbuck himself, or was a subset of those 2.8 million users who received some kind of falsehood about Starbuck. Making all reasonable inferences in favor of the plaintiff,[79] the Court must infer Starbuck himself is not the sole recipient of the Outputs, and they were received by at least some of the 2.8 million unique users who received some falsehood about Starbuck. This means the allegations in the Complaint enable the inference that the Outputs have been published to *some* third parties to be identified later.[80]

On reply, Google contends the Complaint fails to provide "*anything* about the relevant circumstances" of the recipients' receipt of the Outputs.[81] The Court is not persuaded by this argument. Starbuck alleges the recipients viewed the alleged misrepresentations as provided by Google AI regarding Starbuck. This provides

---

[79] *US Dominion*, 2022 WL 2229781, at *4 (citing *Cent. Mortg.*, 27 A.3d at 535).
[80] While proving that third parties received the allegedly defamatory statements may prove challenging for Starbuck later in the case, on this record the Court must acknowledge it is *possible* he can do so.
[81] RB at 12.

sufficient context for this stage of the proceedings. Google's position would essentially require plaintiffs in defamation-by-mass-publication cases to identify specific and detailed circumstances in which thousands or millions of readers read defamatory statements.[82] Google offers no controlling caselaw imposing such a mandate, which would exceed general principles of notice pleading.

Regarding the two unidentified individuals who approached Starbuck in person, because these individuals represented receipt of false statements by Google AI, the allegations outlining their conversations with Starbuck satisfy the requirement to plead publication for those representations they received. While Google objects to the lack of detail as to their identities, Google identifies no caselaw indicating known individual recipients such as these must be identified by name.[83] General identification of recipients is sufficient and provided here.[84]

---

[82] *See, e.g., Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 298 (4th Cir. 2024) (noting that, where an article is published in a circulated periodical, the plaintiff need not plead facts showing someone read the article in order to allege publication, as publication is presumed in such cases (citing *Brian v. Harper*, 144 La. 585, 586-87 (1919))).

[83] AB at 19 ("Google suggests that Mr. Starbuck is required to identify the recipients of false statements by name, but no governing cases support this and significant authority holds to the contrary.").

[84] *Schweitzer*, 2020 WL 1131716, at *9; s*ee also Spanish Tiles, Ltd. v. Hensey*, 2005 WL 3981740 (Del. Super. Mar. 30, 2005) (denying motion to dismiss where defamation claimant alleged "members of the community" as recipients.); *Wright v. Pepsi Cola Co.*, 243 F.Supp.2d 117, 124 (D. Del. 2003) (crediting, on a motion to dismiss, allegation that defamatory statements were made to plaintiff's "peers and the general community at large" even though the allegation was "less than specific."); *Hamblin v. Wilson Cty., Tennessee*, 2022 WL 3331256, at *2-3 (M.D. Tenn. Aug. 11, 2022) (denying motion to dismiss where plaintiff alleged the false statements were broadcast on social media).

Starbuck has alleged sufficient facts showing that some persons other than himself received the Outputs.

### b. *Walters is inapposite.*

In moving to dismiss Starbuck's Complaint, Google relies on *Walters v. OpenAI, L.L.C.*, a Georgia[85] Superior Court case addressing allegations of defamation by AI on summary judgment.[86] As Google frames it, the Georgia court in *Walters* implemented a two-part test to ascertain whether an alleged defamatory statement was actionable. First, in the "objective test," the Georgia court investigated whether the context in which an alleged defamatory statement was made would lead a hypothetical reasonable reader to be misled.[87] Next, in a "subjective test," the Georgia court investigated whether the third-party recipient believed the alleged misrepresentation.[88]

Addressing the second part of the proffered test first, the Court notes Delaware law does not require proof (or pleading) that a recipient of defamatory information

---

At oral argument, Starbuck's counsel acknowledged the potential difficulty that may arise in identifying the two unnamed individual recipients discussed in the Complaint. Tr. 46:5-20 ("I think at the end of the day you would have to ask for the names of those people and they'd have to be deposed. And I do think that's probably our problem at that stage…"). That discovery-phase challenge, while potentially significant, is not yet before the Court. For now, the Court acknowledges it is possible that Starbuck may be able to identify the two highlighted individual recipients later in these proceedings.

[85] Neither party argues Georgia law is operative here.
[86] 2025 WL 2979163 (Ga. Super. Ct. May 19, 2025).
[87] OB at 23-24 (citing 2025 WL 2979163, at *3-4 (citation modified)).
[88] OB at 24 (citing 2025 WL 2979163, at *4).

subjectively believed the statement was true.[89]  Accordingly, Starbuck's failure to explicitly claim that recipients of the Outputs believed them is not dispositive.[90]

As for the "objective test," Google's reliance on *Walters* is inapposite.  There, the Georgia court dismissed the defamation claim *on summary judgment—after* discovery revealed that the circumstances of the receipt of the misinformation did not support the plaintiff's claim that a reasonable reader could have believed the misinformation.[91]  This fact-intensive analysis was conducted after the development of a record the Court lacks here.  Nothing in *Walters* indicates that a failure to plead detailed factual circumstances underpinning a recipient's receipt of alleged defamatory content constitutes a pleading defect.  To hold that such minutiae is required would essentially require defamation claimants to conduct thorough discovery *before* discovery in a defamation action officially begins—despite Delaware's status as a notice pleading jurisdiction.  Accordingly, the Court cannot

---

[89] *Feldman v. Marks*, 2024 WL 4263931, at *6 (Del. Super. Sept. 23, 2024) ("Under Delaware law, Plaintiffs are not required to show the third party 'actually understood the statement' to be defamatory.  In Delaware, a plaintiff must only prove that a third party '*would understand*' the nature of the statement as defamatory." (citation omitted, emphasis in original), *cert. denied*, 2024 WL 4563851 (Del. Super. Oct. 23, 2024), and *appeal dismissed*, 331 A.3d 1269 (Del. 2024).  As noted above, Google does not argue Tennessee law poses a different requirement.

[90] Further, Starbuck alleges facts which can be interpreted to support the inference that some readers of the Gemini Outputs believed the representations therein were true.  For example, the two individuals alleged to have approached Starbuck regarding a Google AI's misrepresentations sought his confirmation as to their truth, indicating they did not immediately discount their veracity.  Compl. ¶¶ 92-93.  State of mind can be pled "generally" in Delaware, pursuant to Superior Court Civil Rule 9(b).

[91] 2025 WL 2979163, at *4.

decide that Starbuck alleged insufficient detail or that a third party could not have reasonably relied on the alleged defamatory statements identified in the Complaint.

*c. Google's remaining argument challenging the publication element fails.*

Google contends that the presence of warnings as to Google AI's accuracy forecloses any reasonable third party from relying on the Google AI Outputs, defeating the element of publication.[92]  The disclaimers Google references are not identified in the Complaint or attached as an exhibit.  Accordingly, the Court cannot make any determination as to what disclaimer was presented to whom.  Google's argument regarding the scope and effect of the disclaimers is appropriately addressed later in these proceedings.[93]

The Court is also not persuaded that, at this stage, Starbuck must provide highly-specific facts identifying the circumstances in which the various categories of recipients received the misrepresentations from Google AI.  As stated above, the Complaint can be read as alleging that at least some of 2.8 million Google AI users, including Starbuck's children and colleagues, as well as two unidentified individuals who approached Starbuck, received the alleged misrepresentations when using

---

[92] OB at 24; RB at 17.

[93] Google asks the Court to take judicial notice as to the contents of Google AI's disclaimers.  OB at 7 n. 17; RB at 17 n. 52.  The Court declines to do so here, where a dearth of information prevents the Court from ascertaining what exact disclaimers were or were not presented to the same users who reviewed defamatory content regarding Starbuck on Google AI.  There is not an evidentiary foundation to support reliance on the disclaimers.  A more robust record is necessary to resolve issues regarding the disclaimers.

Google AI. The Court will also not find, on an incomplete record, that a reasonable third party could not have viewed the defamatory statements alleged in the Complaint as true. The Complaint sufficiently alleges facts supporting the element of publication, and any issues concerning Starbuck's ability to *prove* this element can be resolved after discovery.

### 2. Starbuck pleads sufficient facts to allege actual malice.

Google argues Starbuck failed to allege sufficient facts showing Google acted with actual malice.[94] The parties agree (for purposes of this motion) that Starbuck is a public figure.[95] Starbuck contends his Complaint provides sufficient facts showing actual malice.[96] The Court finds the allegations in the Complaint are sufficient to survive a motion to dismiss.

As noted above, a public figure plaintiff must show that the defendant made defamatory comments "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not."[97] "In a case where the defendant is an institution, the state of mind must be 'brought home' to the person or persons in the organization having responsibility for the publication."[98] This means that the plaintiff must ultimately prove the individual or individuals within an organization

---

[94] OB at 30.
[95] AB at 26 n. 103.
[96] *Id*. at 26.
[97] *New York Times Co. v. Sullivan*, 376 U.S. at 279-280.
[98] *Page v. Oath Inc.*, 270 A.3d 833, 844 (Del. 2022) (citation modified).

who are responsible for the defamatory publication acted with actual malice, not that the organization itself held actual malice towards the plaintiff.[99] Google concedes there is no conflict between Delaware and Tennessee law on this issue.[100] Nor could there be such a conflict, as the actual malice standard was set by the Supreme Court of the United States pursuant to the First Amendment of the United States Constitution.[101]

"Proof of actual malice 'calls a defendant's state of mind into question and does not readily lend itself to summary disposition.'"[102] Malice can be "averred generally" under the Superior Court Rules of Civil Procedure.[103]

Actual malice can be proven through the accumulation of circumstantial evidence.[104] Such evidence can include the fabrication of a story, that a story is so inherently improbable that only a reckless person would have put it into circulation, a defendant's motive for defaming a plaintiff, and evidence showing a defendant knows or suspected an error but refuses to acknowledge it.[105] Courts have also noted

---

[99] *Id*. at 844 n. 85 (quoting *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013)).
[100] OB at 21 n. 62.
[101] *New York Times Co. v. Sullivan*, 376 U.S. at 279-280.
[102] *US Dominion*, 2022 WL 2229781, at *10 (*quoting Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979)). If such a question is not readily resolvable on summary judgment, it certainly is not readily resolvable on a motion to dismiss, where low pleading burdens heavily favor a plaintiff.
[103] Del. Sup. Ct. Civ. R. 9(b).
[104] *US Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 2730567, at *25 (Del. Super. Mar. 31, 2023); *Biro v. Conde Nast*, 963 F.Supp.2d 255, 277 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and *aff'd*, 622 F. App'x 67 (2d Cir. 2015).
[105] *Biro*, 963 F.Supp.2d at 277-78.

23

a refusal to retract a false statement can give rise to an inference of actual malice.[106]

Actual malice must be proven by clear and convincing evidence.[107]

Google first argues Google AI presents warnings to users disclaiming the veracity of its outputs, and this "negate[s] an inference of malice."[108] In support of this claim, Google relies again on *Walters v. OpenAI*,[109] which, as the Court noted above, was decided on summary judgment, not a motion to dismiss. In the instant case, the scope of Google's purported disclaimer was not alleged in the Complaint and has not been provided as an exhibit. The Court is unable to ascertain whether the disclaimer was prominent at the time of the alleged defamation, what language it contained, *whether and how it was presented to users researching Starbuck in particular*, among other issues. Also, in *Walters*, this issue was not resolved on a motion to dismiss, as the Court dismissed the claim only after discovery—including unrebutted expert discovery[110]—confirmed that the disclaimers were presented to

---

[106] *US Dominion*, 2023 WL 2730567, at *25 (citation omitted).

[107] *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 773 (1986) (citation omitted). The Court notes Google repeatedly refers to Starbuck's need to "plead" actual malice by clear and convincing evidence. *See, e.g.*, RB at 18. This position is incorrect, as the relevant Supreme Court precedent requires *proof* by clear and convincing evidence (i.e. *after* discovery), not the provision of such evidence at the pleadings stage. *See Hepps*, 475 U.S. at 773 (reiterating that a public figure plaintiff may not recover damages for a defamatory falsehood unless he *proves* the statement was made with actual malice but applying no such burden of proof at the pleadings stage before evidence is discovered (citation omitted)). Indeed, the pleading burden for malice is *lowered* by the Delaware Rules of Civil Procedure, not raised. Del. Sup. Ct. Civ. R. 9(b).

[108] OB at 33

[109] 2025 WL 2979163.

[110] 2025 WL 2979163, at *4 ("As OpenAI's expert Dr. White explained-whose testimony Walters did not rebut…").

users and the circumstances and contents thereof. Reliance on Google's assertion that it presented a disclaimer to users is thus inappropriate at this stage of the proceedings.[111]

Starbuck also raises different arguments than those presented to the Court in *Walters*. In *Walters*, the plaintiff argued actual malice was satisfied because the AI in question was marketed as a research tool and its makers knew it could hallucinate.[112] Here, Starbuck alleges Google AI was "deliberate[ly] engineered"[113] to defame him, and Google offers no caselaw addressing how a purported disclaimer as to the veracity of an AI output interacts with a claim of *intentional* false representation. In *Walters*, the plaintiff presented no evidence at the summary judgment stage "that anyone at OpenAI had any way of knowing that the output [the recipient] received would probably be false."[114] Here, Starbuck alleges he informed Google of the problem *before* the Outputs were produced, via the Legal Department Notices, and Google did nothing in response.[115] The court in *Walters* explained that the result there came not only because the defendant *proved* a disclaimer was provided to users, but also because of the plaintiff's failure to present other evidence

---

[111] As noted above, the Court declines to take judicial notice of the contents of the purported disclaimers. *Supra* n. 93.
[112] 2025 WL 2979163, at *8-9.
[113] Compl. ¶¶ 77-78.
[114] 2025 WL 2979163, at *8.
[115] Compl. ¶ 97.

25

showing actual malice in the defendant.[116] Such an evidence-based conclusion cannot be reached here, where no evidence has been provided and the motion to dismiss standard does not require any evidentiary proof.

As noted above, Starbuck alleges Google AI admitted to holding a "deliberate, engineered" bias against Starbuck.[117] Google again asks the Court to totally discount this allegation and infer it was outputted following manipulative inputs.[118] Again, given the plaintiff-friendly standard on a motion to dismiss pursuant to Rule 12(b)(6), the Court will not do so.

The Court "(i) accepts as true all well-pleaded factual allegations in the complaint; (ii) credits vague allegations if they give the opposing party notice of the claim; (iii) draws all reasonable factual inferences in favor of the non-moving party; and (iv) denies dismissal if recovery on the claim is reasonably conceivable."[119] The Court cannot infer that the inputs used to generate the "admission" of actual malice alleged in the Complaint were faulty, as doing so would constitute an inference in favor of the *moving* party. The Court further will not discount the *possibility*, on a motion to dismiss, that Google AI, an artificial intelligence tool whose exact capabilities is not yet universally understood, (1) can review and understand its own

---

[116] 2025 WL 2979163, at *8-9.
[117] AB at 29 (citing Compl. ¶¶ 76-78).
[118] OB at 33.
[119] *US Dominion*, 2022 WL 2229781, at *4 (citing *Cent. Mortg.*, 27 A.3d at 535).

26

programming and design, (2) therefore knows it has been "deliberately engineered" to defame individuals such as Starbuck, and (3) accurately reported that to the individual who prompted it to do so as alleged in the Complaint. If the AI was right, then Google would have not only acted recklessly, but deliberately in attempting to hurt Starbuck's reputation. Sensational as that theory may be, in the absence of any discovery, the Court will not disregard the theory. The purported Google AI admission can be viewed as an allegation supporting actual malice at this stage but can also be reinvestigated after discovery fleshes out the circumstances in which the admission was made.

Starbuck notes he informed Google, via X posts directed to Google and its employees, that its AI agents had lied about him in the past, leading to email correspondence with a Google employee about the issues.[120] While these allegations concern alleged representations made by Bard, not the current version of Gemini, and concern misrepresentations not alleged as actionable defamation,[121] Starbuck contends they can still support an inference of actual malice: essentially contending Google's refusal to correct Bard's lies supports the inference that Google acted with actual malice in enabling Google AI products, as a whole group, to lie.[122] Regardless of whether the X posts provide *strong* evidence of actual malice concerning a newer

---

[120] AB at 31-32.
[121] *Id*. at 23 n. 88.
[122] *Id*. at 33.

27

iteration of AI tool than that discussed in the X posts, the Court has not been presented with any binding caselaw indicating that such allegations provide *no* evidence of actual malice. Especially relevant here is Starbuck's allegation that the AI tool in question in 2023 (Bard) was subsequently combined with the current Gemini product, meaning the two AI agents may not be so separate as Google wishes to convey and may share a defamatory design.[123] Accordingly, the Court will not completely disregard the X posts.

Starbuck emphasizes the Legal Department Notices, contending that these notices—both of which predate all of the alleged defamatory statements for which Starbuck seeks relief[124]—provide evidence that Google knew its AI was producing false representations, yet chose not to correct the issue.[125] Google counters that the exact contents of the Legal Department Notices were not identified in the Complaint and were required to have been identified.[126] The Court disagrees.

The guidepost here is possibility.[127] It is *possible* the Legal Department Notices (1) identified the same 22 representations at issue in the Complaint, (2) were received by or circulated to the individuals at Google who are responsible for

---

[123] Compl. ¶ 24.
[124] *Id*. ¶ 100.
[125] AB at 32-34.
[126] OB at 34-35; RB at 22.
[127] *Cent. Mortg.*, 27 A.3d at 537 (Del. 2011) (reemphasizing the "reasonable conceivability standard"); *id*. at 537 n. 13 ("Our governing 'conceivability' standard is more akin to 'possibility,' while the federal 'plausibility' standard falls somewhere beyond mere 'possibility' but short of 'probability.'" (citation omitted)).

policing Google AI's outputs, (3) who then, with knowledge of the defamatory statements' publication, took no corrective action—even while they could do so[128]—as the statements continued to be published to other Google AI users. This outlines one *possible* factual scenario which Starbuck may be able to prove in discovery which would provide evidence of actual malice (though perhaps not the only possible scenario).[129]

Google's argument about a lack of detailed pleading is unfounded, as the Court credits vague allegations that give the opposing party notice of the claim.[130] Google's criticism of Starbuck's failure to attach the Legal Department Notices to the Complaint rings hollow, as Google also did not attach the Legal Department Notices to their motion to dismiss, instead asking the Court to assume the worst-case-scenario for Starbuck regarding their contents. The Court cannot do so when resolving a Rule 12(b)(6) motion to dismiss.

Nor does the Court view the allegation that Starbuck's Legal Department Notices were received by Google's legal department—rather than unspecified engineers responsible for Google AI's outputs—as facially deficient. Google

---

[128] The Court notes Google's argument that Starbuck should have pled how Google could have remedied the issue. OB at 35. Google does not provide any caselaw support for its contention that Starbuck should have done so. Nor is the Court aware of any binding caselaw imposing this burden on Starbuck at the pleadings stage.

[129] *See Biro*, 963 F.Supp.2d at 278 (noting that evidence a defendant knew or suspected an erroneous publication but refused to acknowledge it can support a finding of actual malice).

[130] *US Dominion*, 2022 WL 2229781, at *4 (citing *Cent. Mortg.*, 27 A.3d at 535).

presented no binding caselaw imposing an affirmative duty for Starbuck to give notice of the false outputs to the persons responsible at Google *directly*. Instead, Starbuck is obliged to ultimately *prove* that the persons responsible at Google acted with actual malice,[131] which the evidence *may* show after discovery. At this stage, given the dearth of caselaw addressing how the bring home requirement functions in the context of an alleged AI defamer, the Court is not convinced Google's legal department does *not* include the persons responsible for policing the Google AI publications. The Court is especially unwilling to make such a proclamation given that the creation and management of AI tools such as Google AI is certainly a team effort. Such questions can be resolved after discovery, which comports with the Supreme Court of the United States' view that questions regarding actual malice are not suited for summary disposition.[132]

Google contends the Legal Department Notices cannot be relied upon to support the allegations regarding the representations allegedly published to the two unidentified individuals who approached Starbuck.[133] Google's contention asks the Court to infer that (1) the individuals received false representations *before* Google purportedly received notice of the representations' falsehood via the Legal Department Notices or (2) that the individual recipients received representations not

---

[131] *Page*, 270 A.3d at 844 n. 85 (quoting *Dongguk Univ.*, 734 F.3d at 123).
[132] *US Dominion*, 2022 WL 2229781, at *10 (*quoting Hutchinson*, 443 U.S. at 120 n.9).
[133] RB at 19.

raised in the Legal Department Notices.[134]  Once again, Google asks the Court to infer against the plaintiff at the pleading stage.  It is *possible* the Legal Department Notices put the proper Google personnel on notice of the falsity of the Outputs, and that the unidentified individuals read that same defamatory content *after* Google was on notice and failed to rectify the issues.  The Court will not infer otherwise at this stage.

Starbuck's allegations that Google AI admitted to being "deliberately engineered" to defame Starbuck and that Google received notice of the AI defamation via X posts and the Legal Department Notices provide some basis for Starbuck's claims to progress to discovery into whether individuals at Google held actual malice against Starbuck.  Other allegations not explicitly addressed by the parties in arguing over this issue likewise support Starbuck's claims.  For example, Starbuck alleges Google AI fabricates sources, which courts have determined can support a finding of actual malice.[135]

Given the especially low pleading threshold for malice,[136] the generally plaintiff-friendly canons of Rule 12(b)(6), and the Supreme Court's caution against resolving actual malice on summary disposition, the Court will not dismiss Starbuck's claim for failure to plead actual malice at this stage.

---

[134] *Id.*
[135] *Biro*, 963 F.Supp.2d at 277.  *See, e.g.*, Compl. ¶ 86.
[136] Del. Sup. Ct. Civ. R. 9(b).

### 3. Starbuck pleads damages under both Delaware and Tennessee law.

The Court now turns to Google's claims that Starbuck must plead damages for defamation under Tennessee law, and that he failed to do so.[137] Google contends Tennessee law imposes an obligation for Starbuck to plead damages because Tennessee law does not acknowledge defamation *per se*, and this creates an outcome determinative conflict necessitating the selection of a choice of law.[138] Starbuck disagrees that the conflict is outcome determinative here, contending the Complaint survives under either jurisdiction's law.[139]

> In conducting a conflicts of law analysis, Delaware courts first determine if there is an actual conflict between the laws of two or more relevant jurisdictions. An actual conflict exists when the outcome of the case changes depending upon which jurisdiction's laws are applied. If the outcome of an issue is the same under two jurisdictions' laws, there is a "false conflict," and a Delaware court should not conduct a choice of law analysis. If an actual conflict between the laws of multiple jurisdictions exists, Delaware courts determine which jurisdiction has the most significant relationship to the case, and apply that jurisdiction's laws.[140]

Accordingly, the Court will first investigate whether the purported conflict between Tennessee and Delaware law changes the outcome of this issue.

---

[137] Tr. at 10:17-11:12.
[138] OB at 18.
[139] AB at 15.
[140] *Varsity Brands Hldg. Co. LLC v. Arch Ins. Co.*, 2025 WL 552500, at *12 (Del. Super. Feb. 19, 2025) (first citing *Buhl Bldg., L.L.C. v. Commonwealth Land Title Ins. Co.*, 2019 WL 3916615, at *3 (Del. Super. Aug. 19, 2019); and then citing *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010)).

Starbuck's styling of his Complaint as a defamation *per se* action does not instantly foreclose him from bringing a non-*per se* action under Tennessee law, as the Court examines the substance of the Complaint, not its styling.[141] The Court evaluates whether the Complaint substantively complies with Tennessee's ordinary defamation elements.

Google directs the Court to *Memphis Pub. Co. v. Nichols*, in which the Supreme Court of Tennessee declared that damages for defamation cannot be presumed under Tennessee law.[142] Based on this, Google argues Starbuck's Complaint fails, as it lacks allegations identifying how Starbuck's reputation was specifically harmed and provides insufficient allegations regarding emotional distress and other damages.[143]

Starbuck responds by arguing that Tennessee imposes no obligation to plead specific facts regarding the scope of damages resulting from alleged reputational harm.[144] More specifically, and citing *West v. Media Gen. Convergence, Inc.*, Starbuck emphasizes the Supreme Court of Tennessee's declaration that "[t]he

---

[141] *See Calumet Cap. P'rs LLC v. Victory Park Cap. Advisors, LLC*, 353 A.3d 88, 106 (Del. Ch. 2026) (noting that, under a notice pleading standard, defects of claim styling are not fatal so long as the appropriate cause of action is pled in substance); *see also Kersey v. Wilson*, 2006 WL 3952899 (Tenn. Ct. App. Dec. 29, 2006) (addressing the substance of the plaintiff's purported defamation *per se* complaint to see if the elements of defamation were met, even though Tennessee does not recognize defamation *per se*).

[142] 569 S.W.2d 412, 421 (Tenn. 1978).

[143] OB at 20.

[144] AB at 17-18.

33

plaintiff need not prove special damages or out of pocket losses necessarily, as evidence of injury to standing in the community, humiliation, *or emotional distress* is sufficient."[145]

Considering *West v. Media Gen.*, the Court can find that Starbuck's claim survives a motion to dismiss even absent proof of damages resulting from reputational harm, provided Starbuck alleged sufficient facts to show damage in the form of emotional distress. Lower Courts in Tennessee have subsequently reinforced this conclusion.[146]

Here, Starbuck alleges specific, emotionally distressing thoughts he experiences because of the alleged defamation by Google AI.[147] Starbuck explains that these thoughts are exacerbated against the backdrop of the assassination of Charlie Kirk, another political commentator.[148] Starbuck further notes that he has a history of receiving death threats.[149] The Court views these allegations as sufficient to support a claim for emotional distress damages at this stage in the proceedings, being sufficiently well-pled to proceed to discovery and flesh out the allegations.

---

[145] 53 S.W.3d 640, 648 (Tenn. 2001) (citation omitted, emphasis added).
[146] *See e.g. Austin v. Plese*, 2025 WL 763752 (Tenn. Ct. App. Mar. 11, 2025) (modifying judgment to remove reputational damages but not thereby dismissing defamation claim), *appeal denied* (Aug. 7, 2025), *cert. denied*, 146 S. Ct. 1528 (2026).
[147] Compl. ¶ 95.
[148] *Id*. ¶ 89.
[149] *Id*.

Google's arguments regarding the purported damages deficiencies in the Complaint fail, as Starbuck at least alleges injury in the form of emotional distress. Google offers no argument that Starbuck's claims fail under Delaware law. The Complaint thus survives under both jurisdictions' laws, so a choice of law analysis between the two is unnecessary.[150]

## CONCLUSION

For the reasons explained above, Google's Motion is **DENIED**.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[150] *Varsity*, 2025 WL 552500, at *12 (citation omitted).